**CHILDREN'S HEALTHCARE IS A LEGAL DUTY, INC., et al., Plaintiffs,**

v.

**Joseph T. DETERS, et al., Defendants.**

No. C–1–94–556.

United States District Court, S.D. Ohio, Western Division.

July 12, 1995.

**1130**

Scott T. Greenwood, Greenwood & Hudson, Cincinnati, OH, Robert Bruno, Robert Bruno Ltd., Burnsville, MN, for Children's Healthcare is a Legal Duty Inc. (CHILD).

Scott T. Greenwood, Greenwood & Hudson, Cincinnati, OH, for Steven M. Brown.

Susan Elizabeth Ashbrook, David A. Oppenheimer, Asst. Atty. Gen., Chief Counsel's Staff; Columbus, OH, for Betty Montgomery.

Philip Lewis Zorn, Jr., Asst. Prosecuting Atty., Cincinnati, OH, for Joseph T. Deters.

## ORDER

SPIEGEL, Senior District Judge.

This matter is before the Court on Defendants, Hamilton County Prosecutor and Cincinnati City Solicitor's, Motion for Judgment on the Pleadings (doc. 20), the Plaintiffs' Memorandum in Opposition (doc. 30), and the Defendants' Reply (doc. 37). Additionally, the Attorney General of Ohio has filed a Motion to Dismiss (doc. 36), to which the Plaintiff filed a Memorandum in Opposition (doc. 38), to which the Attorney General replied (doc. 39).

## BACKGROUND

The Plaintiffs, Children's Healthcare is a Legal Duty (CHILD), Steven Brown and his children, filed this action alleging that Ohio Revised Code § 2919.22(A) and § 2151.03 violate the First, Fifth and Fourteenth Amendments of the United States Constitution. CHILD is a non-profit organization whose purpose is to "fight child abuse and neglect associated with religious practices." Mr. Brown is the parent of two children who reside in Hamilton County, Ohio, with their mother, who practices a religion commonly known as Christian Science.

The Plaintiffs object to the Ohio law that provides for spiritual exemptions from the child endangerment and juvenile statutes. The Plaintiffs object specifically to the second sentence of section 2919.22, which provides:

No person, who is the parent, guardian, custodian person having custody or control, or person in loco parents of a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age, shall create a substantial risk of health or safety of the child, by violating a duty of care, protection, or support. It is not a violation of a duty of care, protection or support under this division when the parent, guardian, custodian, or person having custody or control of a child treats the physical or mental illness or defect of the child by spiritual means through prayer alone, in accordance with the tenets of a recognized religious body.

Furthermore, the Plaintiffs object to the first sentence of section 2151.03(B), which provides: "[n]othing in this chapter shall be construed as subjecting a parent, guardian, or custodian of a child to criminal liability when, solely in the practice of his religious beliefs, he fails to provide adequate medical or surgical care or treatment for the child." The Plaintiffs allege that these sections violate the First Amendment of the United States Constitution, and in particular the Establishment Clause.

The Plaintiffs filed suit against the Attorney General of Ohio, Hamilton County Judicial Officers, the Justices of the Ohio Supreme Court, the Prosecuting Attorney for Hamilton County, and the City Solicitor for Cincinnati. We dismissed the judicial officers. See document 11. The remaining De-

fendants now move to dismiss this action, pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6) and 12(c). They claim the Plaintiffs lack standing to bring this action. Additionally, the Prosecutor and City Solicitor argue that they are not sufficient adversaries to be defendants in this action.

Both parties have submitted matters outside of the pleadings. Therefore, the motion is most akin to one for summary judgment, and the Court will consider it as a motion for summary judgment.

## STANDARD OF REVIEW

The narrow question that we must decide on a motion for summary judgment is whether there exists a "genuine issue as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Supreme Court elaborated upon the appropriate standard in deciding a motion for summary judgment as follows:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. *Id.* at 321, 106 S.Ct. at 2551; *Guarino v. Brookfield Township Trustees,* 980 F.2d 399, 405 (6th Cir.1992); *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir.1989). If the moving party meets this burden, then the non-moving party "must set forth specific facts showing there is a genuine issue for trial." Fed. R.Civ.P. 56(e); *see Guarino,* 980 F.2d at 405.

As the Supreme Court stated in *Celotex,* the non-moving party must "designate" specific facts showing there is a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *Guarino,* 980 F.2d at 405. Although the burden might not require the

non-moving party to "designate" facts by citing page numbers, " 'the designated portions must be presented with enough specificity that the district court can readily identify the facts upon which the non-moving party relies.' " *Guarino,* 980 F.2d at 405 (quoting *InterRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir.1989), *cert. denied,* 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990)).

Summary judgment is not appropriate if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Conclusory allegations, however, are not sufficient to defeat a motion for summary judgment. *McDonald v. Union Camp Corp.,* 898 F.2d 1155, 1162 (6th Cir. 1990).

## DISCUSSION

### I. Prosecuting Attorneys

The Plaintiffs filed this action against both the Hamilton County Prosecutor and the Cincinnati City Solicitor. Both claim they are not proper parties to this law suit. A city or county official who prosecutes state criminal charges acts as a state official. *Pusey v. City of Youngstown,* 11 F.3d 652, 657 (6th Cir.1993). Therefore, the Court must treat a suit against such an official as a suit against the state. *Id.* at 658. Consequently, the prosecutors are unnecessary parties, because the Attorney General will represent the interests of the state.

Additionally, the Hamilton County Prosecutor and the Cincinnati City Solicitor must follow state law. The Plaintiffs do not allege a city or county policy statement, ordinance, or regulation is unconstitutional. Plaintiffs only claim that the prosecutors have failed to prosecute actions that the state has deemed legal. "It is difficult to imagine a municipal policy more innocuous and constitutionally permissible, and whose causal connection to the alleged violation is more attenuated, than the 'policy' of enforcing state law." *Surplus Store and Exchange, Inc. v. City of Delphi,* 928 F.2d 788, 791 (7th Cir.1991).

Prosecutors can only bring criminal charges for activities the state has deemed

criminal. While prosecutors do have considerable discretion under criminal law's boundaries, they cannot travel outside those boundaries and create criminal charges. Allowing such a law suit would open a pandora's box, where any party that regarded a previous legal action as criminal could sue the prosecutor. The law makers not the law enforcers are the proper defendants in this type of suit. Therefore, the Hamilton County Prosecutor and the Cincinnati City Solicitor are not proper defendants. We hereby DISMISS them from this law suit.[1]

## II. Ohio Attorney General

### A. Standing

The Ohio Attorney General argues that the Plaintiffs do not have standing to bring this action. The requirement of standing "assure[s] the concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions." *Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 72, 98 S.Ct. 2620, 2630, 57 L.Ed.2d 595 (1978). In order to have standing, the party invoking the court's authority must "show [1] that he personally has suffered some actual or threatened injury as a result of the putative illegal conduct of the defendant, ... and [2] that the injury 'fairly can be traced to the challenged action' and [3] is likely to be redressed by a favorable decision[.]" *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982) (citations omitted). Additionally, the Plaintiffs must show that they are the "proper proponent of the rights on which the action is based." *Haskell v. Washington Township*, 864 F.2d 1266, 1275 (6th Cir.1988).

■ "It should be emphasized that 'standing in no way depends upon the merits of the plaintiff's contention that the particular conduct is illegal.'" *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 500, 95 S.Ct. 2197, 2206, 45

L.Ed.2d 343 (1975)). "Standing is a threshold inquiry; it requires focus on the party seeking to have his complaint heard in a federal court, and *it eschews evaluation of the merits. The court is not to consider the weight or significance of the alleged injury, only whether it exists.*" *Id.* (emphasis in original) (citations omitted). Additionally, we must construe the complaint and all allegations therein in favor of the complaining party. *Warth*, 422 U.S. at 501, 95 S.Ct. at 2206.

■ Finally, we only need inquire whether any one of the parties has standing. *Watt v. Energy Action Educ. Foundation*, 454 U.S. 151, 160, 102 S.Ct. 205, 212, 70 L.Ed.2d 309 (1981). Because we find that the Brown children, through their father, have standing, we do not consider the standing of the other plaintiffs. *Id.*

### 1. Injury in Fact

The Plaintiffs must first establish that they have suffered an "injury in fact." This injury must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992). This assures that the courts are adjudging legal rights in actual "cases" or "controversies." *Valley Forge*, 454 U.S. at 471, 102 S.Ct. at 757.

The Plaintiffs claim that the legislature enacted the child endangerment statute to protect children. They argue that by creating a "spiritual/religious" exemption, the legislature has denied certain children equal protection of the laws and violated the Establishment Clause by favoring certain religions. The Plaintiffs further claim the state has impermissibly based the protection children receive on their parents' religious beliefs. They claim that the classification stigmatizes the children and more importantly provides an immediate threat to their health and well-being.

---

1. Additionally, the prosecutors are not proper adversaries to be part of this law suit. In prior suits, the prosecutors have also argued that this statute is unconstitutional. *See, e.g., State v. Miskimens*, 22 Ohio Misc.2d 43, 22 OBR 393, 490

N.E.2d 931 (1984). In order for us to properly decide an issue, the parties must have adverse legal interests and the dispute must be definite and concrete. *Haskell v. Washington Township*, 864 F.2d 1266, 1275 (6th Cir.1988).

While the Plaintiffs must present the Court with a threatened injury, "[o]ne does not have to await consummation of the threatened injury to seek relief." *Blum v. Yaretsky,* 457 U.S. 991, 1000, 102 S.Ct. 2777, 2784, 73 L.Ed.2d 534 (1982) (quotation omitted). "[T]he question becomes whether any perceived threat to [Plaintiffs] is sufficiently real and immediate to show an existing controversy...." *O'Shea v. Littleton,* 414 U.S. 488, 496, 94 S.Ct. 669, 676, 38 L.Ed.2d 674 (1974). Several Ohio children have already died because they were denied adequate medical care due to their parents' religious beliefs. The threatened injury in the case at bar is real. *See State v. Miskimens,* 22 Ohio Misc.2d 43, 49, 22 O.B.R. 393, 400, 490 N.E.2d 931, 938 (1984) ("From what started as a common childhood illness, from what started as a simple, easily recognizable, well-known bacterial infection which responds to the most basic of modern antibiotics, and at his home located within a few blocks of a modern, well-equipped emergency hospital, which could have, in all likelihood, saved his life, Seth Miskimens died. ... the actions of these defendants in failing to provide for Seth the simplest of medical care, in effect, reduced Seth's chances of survival from nearly one hundred percent to less than one percent.").[2] Therefore, a denial of equal protection of the laws could injure, cripple or in the worst case cause a child's premature death. The standing doctrine does not demand that a court wait until the injury is complete, but only until it is threatened. Accordingly, the Plaintiffs have alleged adequate injury in fact.

### 2. Causation

Second, the Plaintiffs must establish that the injury is "fairly traceable to the challenged action...." *Allen v. Wright,* 468

U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984). To do so, the Plaintiffs must show "a logical nexus between the status asserted and the claim sought to be adjudicated.... Such inquiries into the nexus between the status asserted by the litigant and the claim he presents are essential to assure that he is a proper and appropriate party to invoke federal judicial power." *Flast v. Cohen,* 392 U.S. 83, 102, 88 S.Ct. 1942, 1953, 20 L.Ed.2d 947 (1968).

The Plaintiffs contend that absent a religious exemption, the child endangerment statute would protect the two children here, as it does all other children. They argue that the exemptions lower the requisite standard of care and encourage medical neglect. In support of their argument, the Plaintiffs submitted several affidavits explaining how different religious groups utilize spiritual means to heal their children.[3] The Plaintiffs claim that "members of faith healing sects rely on the existence of the Exemptions for their decisions about medical treatment for their children." Plaintiffs' Brief at 23, document 30.

A key principal behind criminal law is deterrence of illegal conduct. The Plaintiffs argue the child endangerment statue would protect all children if no religious exemption existed. The act in this case is self-enforcing, because it does not require active participation or enforcement by state officers. The statute itself causes the immediate threat of injury. Therefore, the Plaintiffs' cause of injury correlates directly with the statute, and a sufficient nexus exists for the Plaintiffs to bring this claim.

### 3. Availability of Remedy

Finally, the Plaintiffs must show that a favorable decision will redress their injury. *Allen,* 468 U.S. at 751, 104 S.Ct. at 3324. If

---

**2.** *See also Miskimens,* 22 Ohio Misc.2d at 49, 22 OBR at 400, 490 N.E.2d at 938 (cause of death—failure to obtain standard treatment for common bacterial infection); *Lybarger v. People,* 807 P.2d 570, 573 (Colo.1991) (cause of death—failure to obtain standard treatment for bronchial pneumonia); *State v. McKown,* 475 N.W.2d 63 (Minn.1991) (cause of death—failure to obtain standard treatment for diabetic ketoacidosis); *Hall v. State,* 493 N.E.2d 433, 434 (Ind.1986) (cause of death—failure to obtain standard treatment for acute bronchial pneumonia).

**3.** Throughout this decision, we take what the Plaintiffs have said as true. Nothing, however, in this decision should be construed as interpreting the constitutionality of the statute. We do not in any way endorse or reject a specific means of healing children. We are only determining whether the Plaintiffs have put forth an adequate controversy before this court.

this Court found that the statute is unconstitutional, the Plaintiffs threatened injury would subside. First, the children would no longer be treated differently under the law due to their parents' religion. Second, parents throughout Ohio would be on notice that denying their children adequate medical care is a punishable offense. Therefore, relief from injury will "likely" follow from this court issuing a favorable decision, and thus, the Plaintiffs have standing to bring this lawsuit against the Ohio Attorney General.

**B.   Eleventh Amendment Immunity**

■ The Attorney General claims she is immune from suit under the Eleventh Amendment. The Eleventh Amendment provides:

> The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens of Subjects of a Foreign State.

U.S. Const. amend. XI. The Eleventh Amendment applies to both suits brought against a State by its own citizens, as well as those brought by out of state citizens. *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). While the amendment is far reaching, it "does not preclude actions against state officials sued in their official capacity for prospective injunctive or declaratory relief." *Thiokol Corp. v. Department of Treasury*, 987 F.2d 376, 381 (6th Cir.1993) (citing *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)).

■ The Plaintiffs in this case allege that the statute is unconstitutional. Therefore, they seek prospective declaratory relief. The Eleventh Amendment does not bar such a suit. In *Ex Parte Young*, 209 U.S. at 159–60, 28 S.Ct. at 454, the Supreme Court explained why claims for prospective injunctive relief are proper:

> The act to be enforced is alleged to be unconstitutional, and if it be so, the use of the name of the State to enforce an unconstitutional act to the injury of complainants is a proceeding without the authority of and one which does not affect the State in its sovereign or governmental capacity. It

is simply an illegal act upon the part of a state official in attempting by the use of the name of the State to enforce a legislative enactment which is void because unconstitutional. If the act which the state Attorney General seeks to enforce be a violation of the Federal Constitution, the officer in proceeding under such enactment comes into conflict with the superior authority of that Constitution, and he in that case stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct.

"Although the quoted language might suggest the contrary, claims for prospective relief still may be brought against state officers in their official, as opposed to personal, capacity." *Doe v. Wigginton*, 21 F.3d 733, 737 n. 3 (6th Cir.1994) (citing *Kentucky v. Graham*, 473 U.S. 159, 167 n. 14, 105 S.Ct. 3099, 3106 n. 14, 87 L.Ed.2d 114 (1985)). Furthermore, the Supreme Court has stated that "[i]n an injunctive or declaratory action grounded on federal law, the State's immunity can be overcome by naming state officials as defendants." *Graham*, 473 U.S. at 169 n. 18, 105 S.Ct. at 3107 n. 18.

■ Accordingly, the Plaintiffs have properly filed a suit against the Ohio Attorney General. The Attorney General "is the chief law officer for the state and all its departments." Ohio Rev.Code Ann. § 109.02 (Page 1994). As we noted above, the statute in this case is self-enforcing. Therefore, if a portion of the statute is unconstitutional the problem of revoking that portion rests with the Attorney General. Accordingly, she is a proper party in this lawsuit.

### CONCLUSION

For the foregoing reasons, we hereby GRANT the Hamilton County Prosecutor's and Cincinnati City Solicitor's Motion to Dismiss, but DENY the Ohio Attorney General's Motion to Dismiss.

SO ORDERED.